UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CR-00229 JAR |
| | ) | |
| QUIANNA S. BENNETT, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Quianna S. Bennett, represented by defense counsel Gregory Wittner, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count II of the charge, the United States agrees to dismiss Count I of the charge at the time of sentencing, and further agrees that no further federal prosecution will be brought in this District relative to the defendant's scheme to defraud the United States Bankruptcy Court in the Eastern District of Missouri and the Small Business Administration

1

(hereinafter "SBA") from on or about June 2018 to on or about August 2020, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count II, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to approximately $5,150.55 in funds from Bank of America Account #...3741 in the name of QSB Marketing and Consultant Firm LLC; and approximately $9,283.66 in funds from Bank of America account #...9149 in the name of Truelove's In-Home Health Care LLC.

## 3. ELEMENTS:

As to Count II, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant voluntarily and intentionally devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

**Two**, the defendant acted with the intent to defraud; and

2

**Three**, the defendant used, or caused to be used, an interstate wire communication, that is, a wire transfer of funds, in furtherance of, or in an attempt to carry out, some essential step in the scheme.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.   These facts may be considered as relevant conduct pursuant to Section 1B1.3:

The SBA is a federal agency of the Executive Branch of the United States Government that administers assistance to American small businesses. This assistance includes making direct loans to applicants through the Economic Injury Disaster Loan (hereinafter "EIDL") program.   The Coronavirus Aid, Relief, and Economic Security Act (hereinafter "CARES Act") is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. Among other things, the CARES Act expanded the SBA's EIDL program, which provided small businesses with low-interest loans of up to $2 million prior to in or about May 2020, and up to $150,000 beginning in or about May 2020, in order to provide vital economic support to help overcome the loss of revenue small businesses are experiencing due to the COVID-19 pandemic.

To qualify for an EIDL under the CARES Act, an applicant must have suffered "substantial economic injury" from the COVID-19 pandemic, based on a company's actual economic injury as determined by the SBA. EIDLs may be used for payroll and other costs, as well as to cover increased costs due to supply chain interruption, to pay obligations that cannot be met due to revenue loss, and for other similar uses. The SBA Office of Disaster Assistance (hereinafter

3

"ODA"), headquartered in Washington, D.C., is responsible for administering the EIDL program. The ODA has authority over all loans created and disbursed under the EIDL program. EIDL principal proceeds are solely funded by the SBA and disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States.

To qualify for an EIDL, applicants are required to submit applications to the SBA, generally through the SBA's website, wherein the applicant provides information including the business's name, Employer Identification Number (hereinafter "EIN") or social security number for sole proprietorships, gross revenue and cost of goods for the prior year, address, email, date of establishment, number of employees as of January 31, 2020, and bank account information. Applicants are required to certify under penalty of perjury that the information provided in the EIDL application is true and correct.

Pursuant to the provisions governing the EIDL program, loan proceeds are required to be used on certain permissible business expenses. The EIDL funds could be used by the afflicted business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid absent the impact of the COVID-19 pandemic. Applicants are not required to provide documents to the SBA. The SBA relies on the truthfulness of an applicant's submission. Servers for the Central United States region of the SBA, which processes all SBA EIDL applications for the region, are located in Iowa.

At all relevant times, Defendant **QUIANNA S. BENNETT** was a resident of St. Louis County, Missouri, in the Eastern District of Missouri. From on or about 2013 to on or about 2018, Defendant Bennett was the owner/operator of Truelove's II, LLC and Truelove's In-Home Health

4

Care, LLC. These businesses offered home health care services such as nursing, therapy, and medical and social services. On or about September 19, 2013, Defendant Bennett entered into a Limited Liability Operating Agreement for Truelove's II, LLC in which she is listed as having 100 percent interest in the capital of Truelove's II, LLC. On November 7, 2013, Defendant Bennett opened a business bank account at First Community Credit Union in the name of Truelove's II, LLC wherein she was listed as the owner of the business. First Community Credit Union is headquartered in Chesterfield, Missouri and its servers are located within the Eastern District of Missouri.

On or about April 23, 2018, Defendant Bennett, on behalf of Truelove's II, LLC, entered into an Asset Purchase Agreement with Advantage Consumer Directed Services, LLC for the sale of Truelove's II, LLC at a purchase price of $480,000, with $90,000 to be paid as a down payment. Also on or about April 23, 2018, Defendant Bennett, on behalf of Truelove's In-Home Health Care, LLC, entered into an Asset Purchase Agreement with Advantage In-Home Services, LLC for the sale of Truelove's In-Home Health Care, LLC at a purchase price of $320,000, with $60,000 to be paid as a down payment. After Defendant Bennett completed the Asset Purchase Agreements in or about April 23, 2018, Truelove's II, LLC and Truelove's In-Home Health Care, LLC ceased business operations. Following the asset sales, neither business entity provided services or employed any individuals.

On or about July 17, 2020, Defendant Bennett applied for a $150,000 EIDL with the SBA on behalf of Truelove's II, LLC. It was further part of the scheme that the defendant falsely and fraudulently represented on the EIDL application for Truelove's II, LLC that she still owned the assets of Truelove's II, LLC, when in fact she sold the assets of the company in or about April 23,

2018. It was further part of the scheme that but for Defendant Bennett's misrepresentations regarding her ownership interest in the assets of Truelove's II, LLC, the SBA would not have issued EIDL funds to Defendant Bennett. On August 10, 2020, SBA Loan ##47547482-01 was transmitted to Truelove's II, LLC's First Community Credit Union account #XXXXX5242-70, which caused a wire transmission in interstate commerce.

On or about August 20, 2020, Defendant Bennett applied for another $150,000 EIDL with the SBA on behalf of Truelove's In-Home Health Care, LLC. It was further part of the scheme that the defendant falsely and fraudulently represented on the EIDL application for Truelove's In-Home Health Care, LLC that she still owned the assets of Truelove's In-Home Health Care, LLC, when in fact she sold the assets of the company in or about April 23, 2018. It was further part of the scheme that but for Defendant Bennett's misrepresentations regarding her ownership interest the assets of Truelove's In-Home Health Care, LLC, the SBA would not have issued EIDL funds to Defendant Bennett.

At the time that Defendant submitted both EIDL applications to the SBA representing that she needed loan funds in order to maintain operation of her business, Truelove's II, LLC and Truelove's In-Home Health Care, LLC had not been legitimately functioning businesses since in or about 2018. On or about September 1, 2020, Defendant Bennett signed a signature card to open Bank of America account #XXXXXXXX9149 at the O'Fallon, Missouri branch of Bank of America in the name of Truelove's In-Home Health Care, LLC, indicating she is the sole signatory on the account. It was further part of the scheme that Defendant Bennett used the SBA EIDL proceeds to pay for clothing, travel, and restaurant expenditures unrelated to any business functions

6

of Truelove's II, LLC or Truelove's In-Home Health Care, LLC.  In total, Defendant Bennett fraudulently obtained $300,000 in SBA EIDL proceeds.

**5.  <u>STATUTORY PENALTIES</u>:**

The defendant fully understands that the maximum penalty provided by law for the crime to which the defendant is pleading guilty under Count II is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

**6.  <u>U.S. SENTENCING GUIDELINES:  2019 MANUAL</u>:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

*Count II: Wire Fraud*

**c.  <u>Chapter 2 Offense Conduct</u>:**

**(1)  <u>Base Offense Level</u>:**  The parties agree that the base offense level is **7**, as found in Section 2B1.1(a)(1).

**(2)  <u>Specific Offense Characteristics</u>:**  The parties agree that the following Specific Offense Characteristics apply:

The parties agree that the actual loss caused by this offense was more than $250,000 and not more than $550,000, resulting in an offense level increase of **12**.  U.S.S.G. §2B1.1(b)(1).

7

**d.  Estimated Offense Level Before Credit for Acceptance of Responsibility:**  The parties estimate that the Offense Level applicable to Count II prior to the defendant being accorded a reduction for acceptance of responsibility is **19**.

**f.  Chapter 3 Adjustments:**

**(1)  Acceptance of Responsibility:** The parties agree that three (**3**) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**g.  Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is **16**.

**h.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**i.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen

all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.  OTHER:**

    **a.  Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b.  Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the information.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of approximately $5,150.55 in funds from Bank of America Account #...3741 in the name of QSB Marketing and Consultant Firm LLC; approximately $9,283.66 in funds from Bank of America account #...9149 in the name of Truelove's In-Home Health Care LLC. Defendant also agrees to the entry of a forfeiture money judgment in the amount of $300,000. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before

11

sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in

this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

_____
Date

_____
GWENDOLYN E. CARROLL
Assistant United States Attorney

14

4/5/2022
Date

QUIANNA S. BENNETT
Defendant

4/5/2022
Date

GREGORY WITTNER
Attorney for Defendant

15